IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 07 CR 07 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| LAVOYCE BILLINGSLEY ) | |

## MEMORANDUM OPINION AND ORDER

On June 26, 2009, a jury convicted Defendant Lavoyce Billingsley ("Billingsley") on three Counts of an Indictment. The jury found Billingsley guilty of conspiracy to possess with the intent to distribute a measurable amount but less than 500 grams of mixtures containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count One"),[1] possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count Three") and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) ("Count Four"). Billingsley now moves for a judgment of acquittal or alternatively a new trial. For the reasons explained below, Billingsley's Motion for Judgment of Acquittal or New Trial is denied.

## BACKGROUND

Billingsley and co-defendants Scott Lewis ("Lewis") and Vernon Williams ("Williams") were arrested on January 4, 2007 at the culmination of an undercover operation conducted by agents of the Department of Alcohol, Tobacco, Firearms and Explosives("ATF"). The operation involved undercover agent David Gomez ("Gomez"), who masqueraded as a disgruntled drug courier for a

---

[1] Count One of the Indictment charged Billingsley and his co-defendants with conspiracy to possess with intent to distribute in excess of five kilograms of mixtures containing cocaine, but the jury's verdict form states a holding of conspiracy only with respect to less than 500 grams of cocaine. The effect of this discrepancy is discussed in greater detail in Part I.A below.

1

Mexican drug cartel. In a series of recorded meetings beginning on December 18, 2006, Gomez and the defendants planned the robbery of a purported "stash house," a location where large quantities of drugs would be processed as part of a large-scale cocaine distribution operation. Several of the recorded conversations involved the planned procurement of firearms to be used in the stash house robbery. Gomez, the CI and the three defendants were to divide the narcotics stolen from the stash house amongst themselves for further distribution.

On January 4, 2007, the three defendants met with Gomez and a government Confidential Informant ("CI") in Gomez's vehicle, although this meeting was not recorded due to a malfunctioning audio recording device. Gomez's testimony at trial set forth the following sequence of events, about which Billingsley's counsel conducted a thorough cross-examination.

Upon Billingsley's arrival in his own car, Gomez observed Billingsley retrieve an object from the trunk and put it in the waistband of his pants. After then entering Gomez's vehicle for the meeting, Gomez spoke with Billingsley about his awareness of the planned robbery, including that the team was planning to rob approximately twenty kilograms of cocaine from the stash house. Gomez then asked Billingsley if he was still willing to participate, to which Billingsley replied, "yes." Gomez then asked to see "the firearm," and Billingsley retrieved a firearm from his waistband and showed it to Gomez.

Gomez then told defendants that he wanted to show them the location of a storage facility where his and the CI's shares of the stolen narcotics should be left after the robbery. He asked Billingsley to leave his firearm behind, but Billingsley told him that he did not want to do so. Defendants Lewis and Williams then traveled with Gomez and the CI to the storage facility, with Billingsley following in his own vehicle. After exiting the vehicles in which they had arrived, Lewis,

2

Williams and Billingsley were arrested. The video recordings of the arrest showed Billingsley throwing something underneath his vehicle. A Smith & Wesson .40 caliber semi-automatic firearm was later recovered from that location. Agents also retrieved ammunition for the firearm from the trunk of Billingsley's vehicle.

After his arrest, Billingsley waived his Miranda rights and made a statement in which he admitted that he had met with Lewis concerning the planned robbery and was aware that there would be fifteen kilograms of cocaine at the home. He also stated that Lewis had informed him about how the robbery would be carried out, and that he had picked up Lewis and Williams before proceeding to the final meeting with Gomez and the CI.

After a jury trial in June 2009, the jury found that Billingsley had conspired to knowingly and intentionally possess with intent to distribute a measurable amount, but less than 500 grams, of mixtures containing cocaine, that he had possessed a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c), and that he had possessed a firearm after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g). Billingsley now seeks a judgment of acquittal or a new trial under Fed. R. Civ. P. 29(c) and 33, claiming: 1) that there was insufficient evidence to support the jury's guilty verdict; 2) that this Court erred when it sustained a particular objection made by the Government during his cross-examination of the agent to whom he made his post-arrest statement; 3) that this Court erred when it did not allow him to inspect the malfunctioning recording device used on January 4, 2008, and 4) that this court erred when it allowed the government to introduce tape-recorded conversations between Billingsley's co-defendants, Lewis and Williams.

**DISCUSSION**

I.  **Motion for Judgment of Acquittal**

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the defendant. *See* Fed. R. Crim. P. 29. Such a motion should be denied if, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004). A conviction entered after trial by jury should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

To the extent that the jury's verdict on all three Counts reflects its assessment of Agent Gomez's credibility as a witness, the Court notes that determinations of witness credibility are the province of the jury. *See United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007) ("it is for the jury to evaluate the credibility of the witnesses"); *United States v. Scott*, 145 F.3d 878, 883 (7th Cir. 1998) ("questions of witness credibility typically rest with the jury, not the court"). Testimony is only incredible as a matter of law where it is "physically impossible for a witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *Bailey*, 510 F.3d at 733 (internal quotations omitted). Testimony is not incredible as a matter of law simply because a witness has been impeached or has a motive to provide evidence favorable to the government. *See Scott*, 145 F.3d at 883. The Defense actively and effectively cross-examined Agent Gomez at trial and in the absence of a compelling argument that it should do so, the Court will not disturb the jury's implicit findings as to Gomez's credibility.

### A. Count One - Conspiracy to Possess Cocaine with the Intent to Distribute

Count One of the Indictment charged Billingsley with conspiracy to knowingly and intentionally possess in excess of five kilograms or more of mixtures containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The jury's verdict reflected that the Government had proven beyond a reasonable doubt an offense involving "a measurable amount but less than 500 grams of mixtures containing cocaine." Billingsley argues that the jury must therefore have found him guilty of a conspiracy to distribute illegal narcotics, but not of the Government's alleged conspiracy, which involved multiple kilograms of cocaine.

To sustain a conviction for conspiracy under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt that Billingsley agreed with at least one other individual to commit an unlawful act—here, to rob a drug stash house—and that Billingsley knowingly and intentionally joined the agreement. *See United States v. Duran*, 407 F.3d 828, 835 (7th Cir. 2005) (citing *United States v. Thornton*, 197 F.3d 241, 254 (7th Cir. 1999)). Specifically, proof of a drug conspiracy under 21 U.S.C. § 846 requires "substantial evidence that the defendant knew of the illegal objective of the conspiracy and agreed to participate." *United States v. Longstreet*, 567 F.3d 911, 918-19 (7th Cir. 2009). However, the Government need not prove that a defendant conspired with respect to a particular quantity or even a particular type of drug in order to establish a drug conspiracy, but only that the defendant was "aware that a controlled substance was involved." *United States v. Garcia*, 580 F.3d 528, 535 (7th Cir. 2009); *see also United States v. Gougis*, 432 F.3d 735, 745 (7th Cir. 2005) (defendant need not be aware of the specific drug type or quantity to be found guilty of conspiring to violate § 841).

Billingsley further contends that the Government has not satisfied its burden of proving that he agreed to become a member of the drug conspiracy because the Government's witnesses were impeached at trial and the government did not "present any independent corroborated evidence illustrating that [he] was a member of the alleged conspiracy." (R. 346, at 2.) Billingsley also argues that the government failed to prove that he agreed with his *co-defendants* Lewis and Williams, and that agreeing with the CI or the undercover agent is not a conspiracy. An agreement must exist among those who actually intend to carry out the agreed-upon criminal objective. *See United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009). A defendant is cannot be found guilty of conspiracy if he only conspired with an undercover agent or a governmental informant. *See id*.

Here, the record demonstrates that the evidence presented at trial was sufficient for the jury to find Billingsley guilty of conspiracy with Lewis and Williams beyond a reasonable doubt. Further, there was sufficient evidence to establish that he was aware that the conspiracy involved a controlled substance, which is all that is necessary under § 846. There was ample evidence, even considering the Defense's extensive cross-examination of the Government's witnesses, to support the jury's finding that Billingsley agreed to rob the drug stash house: 1) Billingsley met with the CI, the undercover agent and co-defendants Lewis and Williams on January 4, 2007, to discuss the robbery that was scheduled to take place later that evening; 2) he acknowledged that he was planning to participate in the robbery of a drug stash house; 3) he showed the undercover agent the firearm he was carrying to execute the robbery; 4) he acknowledged the quantity of drugs he expected to be located in the stash house; and 5) he made a post-arrest statement admitting that he learned of the robbery from co-defendant Lewis and that he had picked up his co-defendants before proceeding to the final meeting with Gomez and the CI. The Government also introduced

6

independent surveillance evidence corroborating that Billingsley met with the CI, the undercover agent and Lewis and Williams on the day of the robbery and arrived to meet them prior to the robbery at the storage facility (the staging location).

All of this evidence demonstrated Billingsley's intent to carry out the stash house robbery and an agreement between himself and his co-defendants to do so. *See Corson*, 579 F.3d at 813 (fact that defendants showed up together in the pre-robbery meeting place evidence of agreement among defendants). As "the drug quantity is not an element of the crimes defined by § 846 or § 841(a)(1)," *United States v. Martinez*, 518 F.2d 505, 509 (7th Cir. 2008), the difference between the Indictment and the jury's verdict with respect to the amount of drugs for which Billingsley was found responsible does not negate that he is guilty of the conspiracy itself. *See United States v. Carrera*, 259 F.3d 818, 830 (7th Cir. 2001) (jury is not required to find that any specific quantity of drugs is involved before it may properly find a § 846 violation). A rational jury could have found Billingsley guilty of conspiracy beyond a reasonable doubt on the basis of the evidence provided at trial, and as a result, his Motion for Acquittal is denied as to Count One of the Indictment.

### B. Count Three - Possession of a Firearm In Furtherance of a Drug Trafficking Crime

Count Three of the Indictment charged Billingsley and his co-defendants with carrying and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). The jury convicted Billingsley on Count Three as charged. A conviction under 18 U.S.C. § 924(c) requires proof: 1) that a defendant possessed a gun; and 2) that the possession was "in furtherance" of a drug trafficking crime. *See United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005). The possession of a firearm furthers a drug trafficking crime when the weapon advances, moves forward, promotes or facilitates the crime. *See id.* at 813-15. The mere presence of a weapon at the scene

of a drug crime does not satisfy the "in furtherance" element; "there must be a showing of some nexus between the firearm and the drug selling operation." *See Duran*, 407 F.3d at 840. To determine whether the possession of the firearm furthered the drug trafficking offense, courts may consider "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (citation omitted).

There was sufficient evidence presented at trial for the jury to have found Billingsley guilty of possession of a firearm in furtherance of a drug trafficking crime. The evidence showed that Billingsley brought the firearm to the final pre-robbery meeting, showed it in his possession to the undercover agent upon request, and insisted on bringing it with him to the purported storage location where the defendants were arrested. Prior recorded conversations showed that the conspirators intended to commit the stash house robbery while armed and that they sought to procure at least one firearm for that purpose. Therefore, a reasonable jury could have found that the evidence was sufficient to show, beyond a reasonable doubt, that Billingsley possessed the .40 Smith & Wesson firearm that was recovered after his arrest and that he did so in furtherance of a drug trafficking offense. His Motion for Acquittal as to Count Three of the Indictment is therefore denied.

**C. Count Four - Possession of a Firearm by a Felon**

Count Four of the Indictment charged Billingsley with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). The jury convicted Billingsley on Count Four. To prove a violation of 18 U.S.C. § 922(g)(1), the Government must prove: 1) a prior felony conviction; 2)

8

the defendant's possession of the firearm; and 3) that the gun traveled across state lines before the defendant possessed it. *See United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007).

Here, the parties stipulated at trial that Billingsley had previously been convicted of a felony offense and that the .40 Smith & Wesson introduced at trial had previously traveled in interstate commerce. Thus, the only ground upon which the evidence could have been insufficient to support the jury's guilty verdict in the second prong of the analysis, that is, whether Billingsley possessed the firearm at issue.

The evidence is sufficient to support the jury's conclusion that he did so. Although the conversation in Gomez's vehicle on January 4, 2007 was not recorded, Gomez testified at trial that Billingsley had retrieved an object from his vehicle and tucked it away in his waistband, from which he later retrieved the firearm that he showed to Gomez in his vehicle. This evidence supports a conclusion that Billingsley, a convicted felon, actually possessed a firearm at the time of the meeting. Moreover, the videotaped recording of the defendants' arrest shows that Billingsley threw an object under his car at the time of arrest; the firearm introduced as evidence at trial was later retrieved from under his car. Billingsley argues that because the videotape does not clearly show that the item he dropped under his car was a weapon, it is not sufficient evidence to sustain his conviction. A jury could have reasonably concluded that the item depicted on the tape being thrown under the car and later retrieved from that location was the firearm. On the basis of Gomez's testimony and the videotape evidence presented at trial, there was therefore sufficient evidence for a reasonable jury to conclude that Billingsley's possession of a firearm had been proven beyond a reasonable doubt. Accordingly, his Motion for Acquittal as to Count Four of the Indictment is denied.

## II. Motion for New Trial

A motion for a new trial under Rule 33(a) should be granted only if required "by the interests of justice." Fed. R. Crim. P. 33(a). Such motions should be granted sparingly and are only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996).

In support of his Motion for a New Trial, Billingsley claims that the Court erred when it: 1) sustained the government's hearsay objection made during Billingsley's cross-examination of the ATF agent who took his post-arrest statement; 2) did not allow Billingsley to inspect a recording device that malfunctioned during the course of the final pre-robbery meeting on January 4, 2007; and 3) allowed the government to introduce tape recordings of conversations between Billingsley's co-defendants, Lewis and Williams. His contentions are not supported with any legal references or evidentiary citations, and are not fully developed with sufficient analysis or argument. Most fatally, Billingsley has not argued or demonstrated, as he must, that the purported errors had any prejudicial effect on the jury's verdict. *See United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). Instead, he broadly contends that the asserted errors, "when taken in their totality," resulted in his "not receiving a fair trial and verdict."

As to the first issue, the Court's sustaining of a hearsay objection during Billingsley's cross-examination, Billingsley argues that the statement he sought to introduce was not hearsay because it was not to be introduced for the truth of the matter asserted, but rather as an attack on the truthfulness of the testifying agent. He does not explain how eliciting the statement would have

10

demonstrated to the jury that the agent was untruthful, nor does he establish that the Court's refusal to allow the statement had a prejudicial effect on his ability to otherwise impeach the agent's credibility or upon the eventual verdict. Thus, he is not entitled to a new trial as a result of this asserted error.

With respect to the recording device, the Court upheld the Government's assertion of investigative privilege barring Billingsley's inspection of the device on the basis of an *in camera* inspection prior to trial. The Court permitted extensive cross-examination regarding the failure of the recording device, including about when it was sent to be repaired, who if anyone wrote reports on the repair, the policies and procedures for such repairs, and the preparation of reports regarding the meeting that was not recorded. In his present Motion, Billingsley contends that the Court erred in refusing to allow the inspection, but does not present any legal argument that would give the Court reason to reconsider its prior decision on the matter. Nor, again, does he show that refusing to allow him to inspect the equipment itself had a prejudicial effect on the jury's verdict, in light of the opportunities which he had at trial to cross-examine ATF agents about the malfunction. Billingsley has therefore failed to show that he is entitled to a new trial on this ground.

The admissibility of the tape-recorded conversations between Billingsley's co-defendants was established through a Government pre-trial motion *in limine* to which Billingsley did not object. (R. 209; 224; 269.) Billingsley's present Motion does not adequately explain why that admission was erroneous, but instead asserts that the recordings should have been inadmissible because the government did not prove Billingsley's involvement in the conspiracy and thus, the Court assumes, the recordings were not properly admitted as statements made by co-conspirators. However, the jury held that Billingsley was guilty of a conspiracy, and thus the statements were properly admitted.

11

Even if considered in the aggregate, these three purported errors do not constitute sufficient prejudice as to warrant a new trial. Billingsley's Rule 33 Motion for a New Trial is therefore denied.

**CONCLUSION AND ORDER**

For the reasons stated, Billingsley's Motion for a New Trial or a Judgment of Acquittal is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: January 12, 2010